UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ERIC BYRNES,

              Plaintiff,              Case No. 2:19-cv-67

v.                                         Honorable Gordon J. Quist

OJIBWAY CORRECTIONAL FACILITY
et al.,

              Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Ojibway Correctional Facility, Michigan Department of Corrections, Hamel, Washington, and Russell.

**Discussion**

I. <u>Factual Allegations</u>

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Ojibway Correctional Facility (OCF) in Marenisco, Gogebic County, Michigan. Plaintiff sues OCF, the MDOC, MDOC Director Heidi Washington, and MDOC Office of Legal Affairs Manager Richard Russell, together with the following OCF officials: Warden Kathy Olsen; Grievance Coordinator T. Hamel; Mail Room Manager (unknown) Hill; and Office Manager (unknown) Lacount.

Plaintiff's complaint involves the handling of his legal mail by OCF personnel. Plaintiff contends that he has completed the paperwork required to receive special handling of his legal mail.[1]

Plaintiff alleges that, on March 14, 2018, Plaintiff's attorney Mr. Ferry sent a letter to Plaintiff, advising him that his appeal had been denied and that Plaintiff needed to file a motion for reconsideration that presented new evidence and/or that he needed to file an application for leave to appeal to the Michigan Supreme Court. Attorney Ferry's package also contained copies of Plaintiff's trial transcripts, lower court proceedings, unspecified new evidence, an application for leave to appeal, and a Michigan Supreme Court package. Ferry initially mailed the documents to the Earnest C. Brooks Correctional Facility (LRF), where Plaintiff previously was housed. Plaintiff, however, had been transferred to OCF. LRF forwarded the package to OCF, which

---

[1] Under the prisoner mail policy, a prisoner may request special handling of his incoming legal mail. *See* Mich. Dep't of Corr. Policy Directive (PD) 05.03.118 ¶ FF (eff. Mar. 1, 2018). Under the special-handling policy, incoming legal mail must be opened and inspected in the prisoner's presence, and the contents may not be read or skimmed. *Id.* ¶ JJ.

rejected the mail and returned it to Attorney Ferry. Ferry reconfirmed Plaintiff's new address and remailed the package on April 1, 2018, to Plaintiff at OCF, which OCF rejected again.

On April 6, 2018, Attorney Ferry sent Plaintiff a legal letter, advising Plaintiff of his attempts to send the documents that Plaintiff required for his motion for reconsideration and application for leave to appeal to the Michigan Supreme Court, all of which had been rejected by OCF, despite being marked "legal mail" and being certified. The letter also advised Plaintiff of his upcoming deadlines.

On April 11, 2018, Plaintiff filed a grievance about his rejected mail, advising that the handling violated policy and resulted in Plaintiff missing his deadline to file a motion for reconsideration. Defendant Hill responded that legal mail was required to be marked "legal mail" and only counted if it was received directly from the attorney or other legitimate legal source through an official carrier. Plaintiff complains that the mail was appropriately marked and that the rejection of his mail was not handled according to policy, which would have required that he receive notice and a hearing on the rejection and that the mail be held for 15 days for this purpose.

Plaintiff sent a kite to Defendant Warden Olson on an unspecified date. Defendant Olson responded on April 27, 2018, indicating that Plaintiff should allow the grievance process to proceed. Olson advised Plaintiff that, if he had specific issues, he should kite Defendant Lacount, who was the mailroom staff person. Plaintiff kited Defendant Lacount, who advised him that OCF had introduced a new policy to ensure that they make copies of any mail rejection. Plaintiff advised that another prisoner had his legal mail delivered after the mailroom had looked up the suspicious attorney address, and he asked why his legal mail had not received the same treatment. Lacount responded that Plaintiff's incoming mail was handwritten.

3

On May 2, 2018, Plaintiff received a letter from the State Appellate Defender Office (SADO) Deputy Director Kathy Swedlow, who advised that the failure to deliver Attorney Ferry's March 14 and April 1, 2018, letters was beyond Attorney Ferry's control. Swedlow placed the fault on the MDOC.

Plaintiff sent a kite to Defendant Olson on May 10, 2018. He met with Defendants Olson and Lacount, and he asked why, when Attorney Ferry's legal mail to Plaintiff was both certified and labeled "legal mail," OCF rejected the mail twice without informing Plaintiff, thereby denying Plaintiff his right to seek reconsideration in the court of appeals and leave to appeal to the supreme court. On May 24, 2018, Defendant Olson advised Plaintiff that the first of Ferry's mailings was in an envelope that the prison did not accept, the return address was "G. Ferry," and the words "Legal Mail" were handwritten. In addition, the mailing was transferred from another facility. Olson explained that the mailroom had made the determination that the envelope did not meet prison policy and therefore returned the mailing. Plaintiff argues, however, that the response is unsatisfactory, as the prison did not maintain a copy of the envelope or a record of its receipt, so they are fabricating reasons, in violation of prison policy. In addition, he contends, OCF again rejected Attorney Ferry's mailing, demonstrating that they had a policy of rejecting legal mail without notice to the prisoner.

On May 30, 2018, Plaintiff sent a kite to Defendant Hill complaining that his legal mail was being opened before he received it. Defendant Hill responded that some courts sent envelopes sealed only with tape, rather than by wetting the flap.

Plaintiff wrote to Defendant Olson on June 12, 2018, advising her that the mail being sent by Attorney Ferry was related to his case and that the rejections of his mail caused him to miss court dates. Olson advised Plaintiff that he should have Mr. Ferry send it again, and she

4

informed Plaintiff that there was nothing more that she could do. She referred Plaintiff to the law library for help handling his appeal.

On June 12, 2018, Plaintiff was called to the control center for legal mail. When he arrived, he found that his letter of June 5, 2018, which was directed to the United States Marshal, had been returned to the prison. The letter also had been opened and was damaged. The captain in the control center told Plaintiff that he had never seen that happen before and that the mail apparently never left OCF. Plaintiff wrote to Defendant Olson, complaining that his mail was being interfered with, going and coming. Olson responded that the addressee had opened the mail and marked out the address, despite the fact that the envelope had no stamp.

Plaintiff met with Defendant Lacount, complaining that the letter had never been mailed. Lacount indicated that the envelope contained no bar code because it was oversized and therefore manually processed. Alternatively, she argued, the envelope may have been rejected because the address was listed as 500 Federal Building, rather than 744 Federal Building.

Plaintiff complains that Defendants have interfered with both his incoming and outgoing legal mail, apparently in furtherance of a policy or custom. He asserts that he has been denied his right to access the courts, in violation of the First Amendment, and his right to due process under the Fifth and Fourteenth Amendments.

Plaintiff seeks declaratory relief and a permanent injunction. He also seeks compensatory and punitive damages, together with treble damages pursuant to Mich. Comp. Laws § 600.2907.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

5

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. MDOC & Ojibway Correctional Facility

Plaintiff sues both the MDOC and one of its prisons, the OCF. Plaintiff may not maintain a §1983 action against the MDOC or one of its facilities, the OCF. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). For the same reasons, a subsection of the MDOC, which itself is a subsection of the state, is necessarily immune. In addition, the State of Michigan (acting through the MDOC or its prison, the OCF) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the MDOC and OCF.

### B. Defendants Washington, Russell, and Hamel

Plaintiff names MDOC Director Heidi Washington, MDOC Deputy Director of the Office of Legal Affairs Richard Russell, and OCF Grievance Coordinator T. Hamel as Defendants in the action, though he makes no allegations about specific actions taken by Defendants Washington, Russell, and Hamel.

7

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendants Washington, Russell, and Hamel in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ.

P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff intends to suggest that Defendants Washington, Russell, and Hamel are liable because they denied his grievances or failed to supervise their subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Washington, Russell, and Hamel engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C. Due Process Claims

Plaintiff argues that Defendants Hill, Olson and Lacount violated his right to due process by failing to follow prison policy requiring that rejected mail be logged in, that the envelope be copied, and that the mail be kept for two weeks while the prisoner is given notice and an opportunity to be heard. Plaintiff also suggests that Defendants Hill and Lacount engaged in

unauthorized rejections of his property (his legal mail) without due process of law. Finally, Plaintiff alleges that Defendants Hill and Lacount have a custom or policy of failing to provide due process in the handling of prisoner legal mail.

Defendants' alleged failures to comply with administrative rules or policies do not themselves rise to the level of constitutional violations. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that he alleges that Defendants Olson, Hill, and Lacount acted in an unauthorized manner to deprive Plaintiff of his property without due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*

*v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112 ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's complaint will be dismissed.

To the extent that Plaintiff claims that Warden Olson has authorized and Defendants Hill and Lacount have enforced a custom or policy of rejecting mail without notice and an opportunity to be heard, Plaintiff's allegations are sufficient to support a due process claim.

### D. Access to the Courts

Plaintiff alleges that Defendants intentionally interfered with his receipt of Attorney Ferry's mail, which prevented Plaintiff from seeking reconsideration in the Michigan Court of Appeals and seeking leave to appeal in the Michigan Supreme Court.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Upon review, Plaintiff's allegations are sufficient to state an access-to-the-courts claim against the remaining Defendants.

### E. Pending Motion

Plaintiff has filed a motion (ECF No. 4), requesting the Court to appoint an attorney to represent him in this action. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has

carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Ojibway Correctional Facility, Michigan Department of Corrections, Washington, Russell, and Hamel will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's claims that Defendants Olson, Hill, and Lacount violated prison policy and, by their unauthorized actions, deprived him of due process. Plaintiff's claims against Defendants Olson, Hill, and Lacount for violation of his right to access the courts and for violation of his right to due process based on the creation and enforcement of a policy or custom remain in the case. Plaintiff's motion requesting the appointment of counsel (ECF No. 4) will be denied

An order consistent with this opinion will be entered.


Dated: April 22, 2019 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE